No. CR-12-00723-EJD

# UNITED STATES DISTRICT COURT

E-FILING

## NORTHERN DISTRICT OF CALIFORNIA

### *SAN JOSE DIVISION*

## THE UNITED STATES OF AMERICA

### *vs.*

Jose Farias Barajas and Victor Manuel Rodriguez

# SUPERSEDING INDICTMENT

SEE ATTACHMENT

*A true bill.*

_____
*Foreperson*

*Filed in open court this* 24 TH *day of* APRIL

*A.D.* 2013

Paul S. Grewal
**UNITED STATES MAGISTRATE JUDGE**

*Bail. $* No process.

_____

## ATTACHMENT TO INDICTMENT COVER SHEET

| | |
|---|---|
| <u>Count 1</u> | 18 U.S.C. § 1962(d) — Racketeering Conspiracy |
| <u>Count 2</u> | 18 U.S.C. § 1959(a)(5) - Conspiracy to Commit Murder in Aid of Racketeering |
| <u>Count 3</u> | 18 U.S.C. § 1959(a)(6) - Conspiracy to Commit Assault with a Dangerous Weapon in Aid of Racketeering |
| <u>Count 4</u> | 18 U.S.C. § 1959(a)(1) - Murder in Aid of Racketeering |
| <u>Count 5</u> | 18 U.S.C. § 924(c)(1)(A)(I) - Possession of a Firearm During and in Relation to a Crime of Violence |
| <u>Count 6</u> | 18 U.S.C. § 924(j)(1) - Use/Possession of a Firearm in Furtherance of a Crime of Violence Resulting in Murder |
| <u>Counts 7-9</u> | 21 U.S.C. §§ 846, 841(a)(1) - Conspiracy to Distribute and Possess with Intent to Distribute, and Distribution and Possession with Intent to Distribute, 5 Grams or More of Methamphetamine; |
| <u>Count 10</u> | 18 U.S.C. § 924(c)(1)(A)(I) - Possession of a Firearm During and in Relation to and in Furtherance of a Drug Trafficking Crime |
| <u>Counts 11-12</u> | 18 U.S.C. § 922(g) - Possession of a Firearm By A Prohibited Person |

1



FILED

2013 APR 24  P 3: 38

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N.D. DIST. SAN JOSE

1  MELINDA HAAG (CABN 132612)
   United States Attorney
2
3
4
5
6
7
8
9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                         SAN JOSE DIVISION

12   UNITED STATES OF AMERICA,            )    No.  CR 12-00723 EJD
                                          )
13            v.                          )
                                          )
14                                        )    VIOLATIONS: 18 U.S.C. § 1962(d) –
     JOSE FARIAS BARAJAS,                 )    Racketeering Conspiracy; 18 U.S.C. § 1959
15        a/k/a "Oso," and                )    – Violent Crime in Aid of Racketeering; 18
     VICTOR MANUEL RODRIGUEZ,             )    U.S.C. § 924(j) – Use of Firearm Causing
16        a/k/a "Silencer,"               )    Murder; 21 U.S.C. § 846 – Conspiracy to
                                          )    Possess with Intent to Distribute and
17            Defendants.                 )    Distribute Methamphetamine; 21 U.S.C. §
                                          )    841(a)(1) – Possession With Intent to
18                                        )    Distribute and Distribution of
                                          )    Methamphetamine;  18 U.S.C. § 924(c) –
19                                        )    Use/Possession of Firearm in Furtherance of
                                          )    Crime of Violence and Drug Trafficking
20                                        )    Crime; 18 U.S.C. §§ 922(g)(3) & (5) –
                                          )    Possession of a Firearm by Prohibited
21                                        )    Person; 18 U.S.C. § 2 –  Aiding and
                                          )    Abetting
22                                        )
                                          )    (SAN JOSE VENUE)
23                                        )
                                          )
24                                        )
                                          )
25                                        )
     ———————————————————————              )
26
27              S U P E R S E D I N G    I N D I C T M E N T
28

1  The Grand Jury charges:

2  <u>Introductory Allegations</u>

3       1.      The Mexican Mafia, also known as "*La Eme*," is a prison gang that was formed in
4  the late 1950s in the California State prison system.  It was formed by Hispanic inmates for
5  protection against other prison gangs as well as to engage in illegal activities for profit.  The
6  Mexican Mafia soon became dominated by Mexican and Mexican-American inmates from
7  Southern California, and Hispanic inmates from Northern California perceived that they were
8  marginalized under the dominion of the Mexican Mafia.  As a result, in the late 1960s, Hispanic
9  inmates with roots in Northern California banded together and formed what became *Nuestra*
10 *Familia* – Spanish for "Our Family" and also known by the letters "*NF*" – in order to protect
11 themselves and advance their own interests.

12      2.      By the 1970s, *Nuestra Familia* rivaled the power of the Mexican Mafia and other
13 prison gangs in California, and the competition between members and associates of *Nuestra*
14 *Familia* and the Mexican Mafia resulted in violent and often fatal encounters.  Similarly, outside
15 of prison, the members and associates of *Nuestra Familia* and the Mexican Mafia competed with
16 each other to control such profitable criminal activities as narcotics trafficking, extortion, and
17 robbery.  This competition between the two rivals led to murder, attempted murder, and other
18 acts of violence.

19      3.      The Mexican Mafia is composed of relatively few full members, who are known
20 as "brothers," "carnales," "dons," or "big homies," and who control the gang.  Below the rank of
21 "brother," are Mexican Mafia "soldiers" or "associates."  Despite being imprisoned and being
22 closely scrutinized by prison officials, Mexican Mafia brothers still manage to convey their
23 orders to Mexican Mafia members and associates throughout the prison system and outside of
24 prison through a variety of means, including secret notes, called "kites" or "filters," coded letters,
25 and messages conveyed by complicit visitors. When Mexican Mafia members or associates
26 complete their sentences and rejoin their communities, they remain loyal to the Mexican Mafia
27 and work to further the goals of the Mexican Mafia outside the prison environment.  One of the
28 significant goals of the Mexican Mafia is to control and profit from narcotics trafficking.

SUPERSEDING INDICTMENT                    -2-

4.      The Mexican Mafia exerts control over and directs the activities of others, notably members of various *Sureño* street gangs. *Sureños* are gang members who pledge their allegiance and loyalty to the Mexican Mafia, and who have been instructed on the rules, rituals, and obligations of the Mexican Mafia. *Norteños*, on the other hand, are gang members who are loyal to *Nuestra Familia*. The Mexican Mafia is able to assert control and influence over *Sureño* gang members outside the penal system·because: (1) the gang members do not want their incarcerated members to be assaulted, and (2) the gang members want the protection provided by the Mexican Mafia if they ever become incarcerated. *Sureños*, which is Spanish for "Southerner," dominate street gang activity in Southern California and have developed a significant presence in Northern California as well, although they remain outnumbered by *Norteños* in Northern California.

5.      *Sureños* commit crimes such as narcotics trafficking, robbery, and murder to benefit themselves and the Mexican Mafia. New Mexican Mafia brothers are pulled from the ranks of *Sureños* who have proven their loyalty to the Mexican Mafia by committing crimes for the gang's benefit. Within the ranks of *Sureños*, gang members earn promotion and prestige by proving themselves through the commission of criminal activities benefitting the gang and/or by spending time in jail or prison. *Sureños* typically engage in street-level drug dealing as well as crimes of violence, including murder and robbery. *Sureños* also follow the rules of the Mexican Mafia and are "disciplined" for failing to follow the rules or otherwise failing to achieve the gang's goals. The gang member who is being disciplined is typically beaten by three fellow gang members while they count to 13. When the discipline is completed, the issue is resolved and put behind them.

6.      *Sureños* are organized into smaller gangs based on local neighborhoods or "hoods." Each *Sureño* gang has a name and its members meet and work together to carry out their illegal activities for their own individual benefit, the benefit of the particular *Sureño* gang, the benefit of *Sureños* generally, and the benefit of the Mexican Mafia. Because *Sureños* are outnumbered by *Norteños* in Northern California, sometimes smaller *Sureño* gangs combine together for protection against rival *Norteño* gangs. In addition, a member of one *Sureño* gang could coordinate his illegal activity, including drug trafficking, with a member or members of a

1  different *Sureño* gang. *Sureño* gang members often socialize with *Sureño* gang members from

2  other neighborhoods, not just with other *Sureños* in their own particular gang.

3        7.     The Mexican Mafia and its affiliated gangs (*Sureños*) have been and continue to

4  be engaged in a fierce and violent gang war with the *Nuestra Familia* and the *Nuestra Familia's*

5  affiliated gangs (*Norteños*). Within the prison system, this rivalry manifests itself in beatings and

6  stabbings, which often result in death. Outside the prison system, the two sides, *Norteños* and

7  *Sureños*, fight for control of territory in which to conduct narcotics trafficking and other crimes,

8  as well as to recruit and influence non-gang members. In addition to fighting for control over

9  remunerative illegal activities and using violence and terror for the purpose of enriching

10  themselves, the two sides also engage in violence simply to assert their gang identities,

11  to claim or protect their territory, to challenge or respond to a challenge, to retaliate against a

12  rival gang or member, to gain notoriety and show their superiority over others and to send a

13  message to others that they are strong, powerful and not to be provoked.

14        8.     *Sureño* gangs want and need to have a reputation for being strong and powerful.

15  They also need to increase their membership to survive and continue functioning as an

16  organization on the streets. If a *Sureño* gang has a reputation for being weak, other gangs will

17  challenge and assault its members, and will also attempt to take over its territory. This will cause

18  the gang to lose membership and eventually dissolve. If a *Sureño* gang has a large membership

19  and a reputation for being strong, powerful and dominant, rival gangs will think twice before

20  they challenge it and victims/witnesses will think twice about assisting authorities with any

21  prosecution attempt against it. This will allow the gang to grow in strength, thrive in its criminal

22  activity, and rule its territory. A member or associate of a *Sureño* gang is expected to "hunt" —

23  that is, seek out and beat, stab, and shoot — *Norteños*. Similarly, a member or associate of a

24  *Sureño* gang is expected to confront and attack any suspected *Norteño* that he encounters.

25  Because of this on-going war, many innocent individuals have been hurt or killed as a result of

26  mistaken identity or for being in the wrong place at the wrong time.

27        9.     *Sureños* identify themselves with the color blue, the number "13" and/or the

28  Roman numeral "XIII," "X3" and "trece," which is Spanish for thirteen. The number "13"

SUPERSEDING INDICTMENT        -4-

corresponds with the letter "M," which is the thirteenth letter of the alphabet; the letter "M," in turn, is a symbol of the Mexican Mafia. As with the number "13" and the Spanish word "*Sureño*," "Sur" is commonly, but not exclusively, displayed by *Sureño* criminal street gang members in tattoos, graffiti, drawings, hand signs, and on clothing, as a way of displaying their affiliation, loyalty, and commitment to the gang.

10. *Norteños* identify themselves with the color red, the number "14" and/or the Roman numeral "XIV." The number "14" corresponds with the letter "N," which is the fourteenth letter of the alphabet; the letter "N," in turn, is a symbol of the *Nuestra Familia*. As with the number "14" and the Spanish word "*Norteño*," "Norte" is commonly, but not exclusively, displayed by *Norteño* criminal street gang members in tattoos, graffiti, drawings, hand signs, and on clothing, as a way of displaying their affiliation, loyalty, and commitment to the gang.

The Colonias/VTG Gang

11. Varrio Colonias Trece ("Colonias") is the name of a *Sureño* gang based in San Jose, California. It is sometimes referred to as "Colonias" or "VCT." Varrio Tami Lee Gangsters ("VTG") is the name of another *Sureño* gang based in San Jose, California. It is sometimes referred to as "Tami Lee" or "VTG." Colonias and VTG have existed as *Sureño* street gangs in San Jose for over 10 years. The gangs are located in east San Jose, and their respective territories have historically abutted and overlapped with each other. Their collective territory covers the area south of Story Road, north of Tully Road, east of McLaughlin Avenue and west of Highway 101. For at least the last five years, Colonias and VTG have joined forces and essentially operate as a single, unified association-in-fact enterprise, although they each retain their separate historical gang names, which are referred to in graffiti and tattoos. Colonias/VTG Gang members coordinate their activities and engage in violence together to defend their collective territory against rival *Norteño* gangs.

12. The Colonias/VTG Gang conducts meetings that are open only to Colonias and VTG gang members. The Colonias/VTG Gang meetings occur approximately once a month, occur at different locations and with very short advance notice. At the meetings, members must

1    pay dues and are checked off on a list of members.  If a member does not have enough money to

2    pay his dues, he is subject to discipline.  The dues are used to buy firearms for the gang.   During

3    the meetings, current gang activities and priorities are discussed, such as defending the territory

4    against encroachment by *Norteños* and the need for younger members and associates to "put in

5    work."  "Putting in work," most often refers to engaging in violence against *Norteños* and selling

6    drugs.  It can more generally be referred to doing anything on behalf of the gang.  To facilitate

7    "putting in work," firearms are passed among gang members who are expected to use the guns to

8    carry out the gang's activities, typically attacking *Norteños*, and then passed on to a fellow gang

9    member so he can do the same.  Sometimes new members are "jumped in" at meetings, which is

10   an initiation ritual that involves the new member being assaulted by three gang members for a

11   count of 13 seconds.

<u>The Racketeering Enterprise</u>

13       13.    For all time periods relevant to this Superseding Indictment, the Colonias/VTG

14   Gang, including its leadership, members, and non-member associates, constituted an "enterprise"

15   as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals

16   associated in fact.  The enterprise constituted an ongoing organization whose members

17   functioned as a continuing unit for a common purpose of achieving the objectives of the

18   enterprise.  The enterprise was engaged in, and its activities affected, interstate and foreign

19   commerce.

<u>Purposes of the Enterprise</u>

21       14.    The purposes of the Colonias/VTG Gang enterprise included the following:

22           a.     Preserving and protecting the power, territory, reputation, and profits of

23   the enterprise through the use of intimidation, violence, threats of violence, assaults, and murder;

24           b.     Promoting and enhancing the enterprise and the activities of its members

25   and associates, including, but not limited to, murder, attempted murder, narcotics trafficking,

26   theft of vehicles, robberies and other criminal activities;

27           c.     Keeping victims, potential victims, and community members in fear of the

28   enterprise and its members and associates through violence and threats of violence;

1       d.     Protecting the enterprise's members and associates who committed

2 crimes by hindering, obstructing and preventing law enforcement officers from identifying the

3 offenders, apprehending the offenders and successfully prosecuting and punishing the offenders;

4       e.     Providing assistance to and working with other *Sureño* gangs against their

5 common enemies, such as members of *Norteño* gangs.

6 The Defendants

7      15.    The defendant, JOSE FARIAS BARAJAS, a/k/a *"Oso,"* which is Spanish for

8 "bear," has been a member of the Colonias gang since at least in or about 2010. BARAJAS has

9 the word "Colonias" tattooed on his chest and several other tattoos that are gang related.

10      16.    The defendant, VICTOR MANUEL RODRIGUEZ, a/k/a "Silencer," has been a

11 member of the VTG gang since at least in or about 2009. RODRIGUEZ has a tattoo of "VTG"

12 on the back of his head and on his stomach. On the front of his arms he has the tattoos "1" (right

13 arm) and "3" (left arm). On his left hand he has three dots and on his left elbow he has three

14 dots. He has several other tattoos that are gang related.

15      17.    Among other activities taken in furtherance of the Colonias/VTG Gang, on or

16 about August 13, 2012, in the vicinity of Denair Avenue and Letitia Street in San Jose,

17 California, VICTOR MANUEL RODRIGUEZ, aided by JOSE FARIAS BARAJAS, who served

18 as the driver, shot at an individual who they believed was a rival gang member, hitting the

19 individual and killing him.

20      18.    The defendants, who are members of the Colonias/VTG Gang, acted individually,

21 with each other, and also with other members and non-members of Colonias/VTG Gang in the

22 commission of racketeering activities and other criminal conduct.

23 <u>COUNT ONE</u>:    (18 U.S.C. § 1962(d) — Racketeering Conspiracy)

24 The Racketeering Conspiracy

25      19.    Paragraphs 1 through 18 of this Superseding Indictment are realleged and

26 incorporated by reference as though fully set forth herein.

27      20.    Beginning on a date unknown to the Grand Jury but since at least 2009, and

28 continuing up through and including the present, in the Northern District of California and

1  elsewhere, the defendants,

2                      JOSE FARIAS BARAJAS, a/k/a "Oso," and

3                 VICTOR MANUEL RODRIGUEZ, a/k/a "Silencer,"

4  together with others known and unknown, each being a person employed by and associated with

5  the Colonias/VTG Gang, an enterprise engaged in, and the activities of which affected, interstate

6  and foreign commerce, unlawfully, knowingly, and intentionally conspired to violate Title 18,

7  United States Code, Section 1962(c), that is to conduct and participate, directly and indirectly, in

8  the conduct of the affairs of the Colonias/VTG Gang enterprise through a pattern of racketeering

9  activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), which pattern of

10  racketeering activity consisted of:

11             a.     multiple acts involving murder, in violation of California Penal Code §§

12  187, 188, 189, 182, 21a, 664, 653f, and 422;

13             b.     multiple acts involving the distribution of controlled substances, in

14  violation of 21 U.S.C. §§ 841(a)(1) and 846; and

15             c.     multiple acts indictable under 18 U.S.C. §§ 1512 and 1513.

16       21.    It was part of the conspiracy that each defendant agreed that a conspirator would

17  commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

18                         Means and Methods of the Conspiracy

19       22.    It was part of the means and methods of the conspiracy that the defendants and

20  other members and associates of the Colonias/VTG Gang, discussed with other members and

21  associates of the Colonias/VTG Gang, among other things, the membership, rules and

22  enforcement of the rules of the Colonias/VTG Gang; the status of Colonias/VTG Gang members

23  and associates who were arrested or incarcerated; the discipline of Colonias/VTG Gang

24  members; Colonias/VTG Gang members' encounters with law enforcement; the identities of

25  individuals suspected of cooperating with law enforcement and the proposed actions to be taken

26  against them; and plans and agreements regarding the commission of future crimes, including

27  murder, narcotics distribution, illegal possession of firearms, and assault, as well as ways to

28  conceal these crimes.

SUPERSEDING INDICTMENT             -8-

23. It was further part of the means and methods of the conspiracy that the defendants and other members and associates of the Colonias/VTG Gang agreed to purchase, possess, maintain, use, and circulate a collection of firearms for use in criminal activity by the members and associates of the Colonias/VTG Gang.

24. It was further part of the means and methods of the conspiracy that the defendants and other members and associates of the Colonias/VTG Gang agreed that acts of violence, including murder, attempted murder, and assault, would be committed by members and associates of the Colonias/VTG Gang against rival gang members and others when it furthered the status and goals of the enterprise. Members of the Colonias/VTG Gang also used violence to impose discipline within the Colonias/VTG Gang.

25. It was further part of the means and methods of the conspiracy that the defendants and other members and associates of the Colonias/VTG Gang agreed to distribute narcotics and commit other crimes, and to conceal their criminal activities by obstructing justice, threatening and intimidating witnesses, and other means.

All in violation of Title 18, United States Code, Section 1962(d).

COUNT TWO:     (18 U.S.C. § 1959(a)(5) — Conspiracy to Commit Murder in Aid of Racketeering)

26. Paragraphs 1 through 18 and 22 through 25 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

27. At all times relevant to this Superseding Indictment, the Colonias/VTG Gang constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

28. At all times relevant to this Superseding Indictment, the Colonias/VTG Gang, the above-described enterprise, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, multiple

1  acts involving murder, in violation of California Penal Code §§ 187, 188, 189, 182, 21a, 664,

2  653f, and 422; multiple acts involving the distribution of a controlled substance, in violation of

3  21 U.S.C. §§ 841(a)(1) and 846; and multiple acts indictable under 18 U.S.C. §§ 1512 and 1513.

4          29.      Beginning on a date unknown to the Grand Jury but since at least 2009, and

5  continuing up through and including the present, in the Northern District of California and

6  elsewhere, for the purpose of gaining entrance to and maintaining and increasing position in the

7  Colonias/VTG Gang, an enterprise engaged in racketeering activity, the defendants,

8                          JOSE FARIAS BARAJAS, a/k/a "Oso," and

9                    VICTOR MANUEL RODRIGUEZ, a/k/a "Silencer,"

10 together with others known and unknown, unlawfully, knowingly, and intentionally combined,

11 conspired, confederated, and agreed together and with each other to commit murder, in violation

12 of California Penal Code Sections 187, 188, and 189, to wit, the defendants agreed together and

13 with each other to kill actual and suspected members of rival gangs, individuals suspected of

14 cooperating with law enforcement, and individuals who defied the will of the Colonias/VTG

15 Gang.

16         All in violation of Title 18, United States Code, Section 1959(a)(5).

17 COUNT THREE:      (18 U.S.C. § 1959(a)(6) — Conspiracy to Commit Assault with a

18                          Dangerous Weapon in Aid of Racketeering)

19         30.      Paragraphs 1 through 18, 22 through 25, and 27 through 28 of this Superseding

20 Indictment are realleged and incorporated by reference as though fully set forth herein.

21         31.      Beginning on a date unknown to the Grand Jury but since at least 2009, and

22 continuing up through and including the present, in the Northern District of California and

23 elsewhere, for the purpose of gaining entrance to and maintaining and increasing position in the

24 Colonias/VTG Gang, an enterprise engaged in racketeering activity, the defendants,

25                          JOSE FARIAS BARAJAS, a/k/a "Oso," and

26                    VICTOR MANUEL RODRIGUEZ, a/k/a "Silencer,"

27 together with others known and unknown, unlawfully, knowingly, and intentionally combined,

28 conspired, confederated, and agreed together and with each other to commit assault with a

1  dangerous weapon, in violation of California Penal Code Section 245(a)(1), to wit, the

2  defendants agreed together and with each other to assault, with guns and other dangerous

3  weapons, actual and suspected members of rival gangs, individuals suspected of cooperating with

4  law enforcement, and individuals who defied the will of the Colonias/VTG Gang.

5      All in violation of Title 18, United States Code, Section 1959(a)(6).

6  COUNT FOUR:      (18 U.S.C. §§ 1959(a)(1) and 2 — Murder in Aid of Racketeering of

7                              Victim-1)

8      32.    Paragraphs 1 through 18, 22 through 25, and 27 through 28 of this Superseding

9  Indictment are realleged and incorporated by reference as though fully set forth herein.

10     33.    On or about August 13, 2012, in the Northern District of California, for the

11 purpose of maintaining and increasing position in the Colonias/VTG Gang, an enterprise engaged

12 in racketeering activity, the defendants,

13                JOSE FARIAS BARAJAS, a/k/a "Oso," and

14                VICTOR MANUEL RODRIGUEZ, a/k/a "Silencer,"

15 unlawfully, willfully, and intentionally murdered Victim-1, in violation of California Penal Code

16 Sections 187, 188, and 189.

17     All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

18 COUNT FIVE:      (18 U.S.C. §§ 924(c)(1)(A) and 2 — Use/Possession of Firearm in

19                              Furtherance of Crime of Violence)

20     34.    Beginning on a date unknown to the Grand Jury but since at least 2009, and

21 continuing up through and including October 3, 2012, in the Northern District of California and

22 elsewhere, the defendants,

23                JOSE FARIAS BARAJAS, a/k/a "Oso," and

24                VICTOR MANUEL RODRIGUEZ, a/k/a "Silencer,"

25 each aided and abetted by the other, together with others known and unknown, unlawfully,

26 willfully, and knowingly used and carried a firearm during and in relation to a crime of violence

27 for which they may be prosecuted in a court of the United States, namely, the Colonias/VTG

28 Gang racketeering conspiracy charged in Count One of this Superseding Indictment, the

SUPERSEDING INDICTMENT                    -11-

1 | conspiracy to commit murder in aid of racketeering charged in Count Two of this Superseding

2 | Indictment, the conspiracy to commit assault with a dangerous weapon in aid of racketeering

3 | charged in Count Three of this Superseding Indictment, and the murder in aid of racketeering of

4 | Victim-1 charged in Count Four of this Superseding Indictment. and possessed, brandished, and

5 | discharged a firearm in furtherance of the offenses charged in Count One, Count Two, Count

6 | Three, and Count Four of this Superseding Indictment.

7 |      All in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

8 | COUNT SIX:      (18 U.S.C. §§ 924(j)(1) and 2 — Use/Possession of Firearm in Furtherance

9 |      of Crime of Violence Resulting in Murder)

10 |      35.      On or about August 13, 2012, in the Northern District of California, the

11 | defendants,

12 |      JOSE FARIAS BARAJAS, a/k/a "Oso," and

13 |      VICTOR MANUEL RODRIGUEZ, a/k/a "Silencer,"

14 | each aided and abetted by the other, unlawfully, willfully, and knowingly used and carried a

15 | firearm, during and in relation to a crime of violence for which they may be prosecuted in a court

16 | of the United States, namely, the murder in aid of racketeering of Victim-1 charged in Count

17 | Four of this Superseding Indictment, and possessed a firearm in furtherance of such crime, and in

18 | the course of that crime caused the death of a person through the use of a firearm, which killing

19 | was murder as defined in Title 18, United States Code, Section 1111(a).

20 |      All in violation of Title 18, United States Code, Sections 924(j)(1) and 2.

21 | COUNT SEVEN:      (21 U.S.C. § 846 – Conspiracy to Possess with Intent to Distribute and

22 |      Distribute Methamphetamine)

23 |      36.      Beginning on a date unknown to the Grand Jury, but since at least June 2012, and

24 | continuing up through and including the present, in the Northern District of California, and

25 | elsewhere, the defendants,

26 |      JOSE FARIAS BARAJAS, a/k/a "Oso," and

27 |      VICTOR MANUEL RODRIGUEZ, a/k/a "Silencer,"

28 | unlawfully, knowingly, and intentionally conspired to distribute and possess with intent to

SUPERSEDING INDICTMENT      -12-

1 | distribute a Schedule II controlled substance, specifically, 5 grams or more of actual

2 | methamphetamine, its salts, isomers, and salts of its isomers.

3 |      All in violation of Title 21, United States Code, Sections 846, 841(a)(1), and

4 | 841(b)(1)(B)(viii).

5 | COUNT EIGHT:     (21 U.S.C. § 841(a)(1) – Possession With Intent to Distribute and

6 |                       Distribution of Methamphetamine)

7 |      37.     On or about September 17, 2012, in the Northern District of California, the

8 | defendants,

9 |                  JOSE FARIAS BARAJAS, a/k/a "Oso," and

10 |                VICTOR MANUEL RODRIGUEZ, a/k/a "Silencer,"

11 | each aided and abetted by the other, unlawfully, knowingly, and intentionally distributed and

12 | possessed with intent to distribute a Schedule II controlled substance, specifically, 5 grams or

13 | more of actual methamphetamine, its salts, isomers, and salts of its isomers.

14 |      All in violation of Title 21, United States Code, Sections 841(a)(1) and

15 | 841(b)(1)(B)(viii), and Title 18, United States Code, Section 2.

16 | COUNT NINE:     .(21 U.S.C. § 841(a)(1) – Possession With Intent to Distribute and

17 |                       Distribution of Methamphetamine)

18 |      38.     On or about October 3, 2012, in the Northern District of California, the

19 | defendants,

20 |                  JOSE FARIAS BARAJAS, a/k/a "Oso," and

21 |                VICTOR MANUEL RODRIGUEZ, a/k/a "Silencer,"

22 | each aided and abetted by the other, unlawfully, knowingly, and intentionally distributed and

23 | possessed with intent to distribute a Schedule II controlled substance, specifically, 5 grams or

24 | more of actual methamphetamine, its salts, isomers, and salts of its isomers.

25 |      All in violation of Title 21, United States Code, Sections 841(a)(1) and

26 | 841(b)(1)(B)(viii), and Title 18, United States Code, Section 2.

27 | //

28 | //

1 | COUNT TEN:      (18 U.S.C. §§ 924(c)(1)(A) and 2 — Use/Possession of Firearm in

2 |                                Furtherance of Drug Trafficking Crime)

3 |      39.     Beginning on a date unknown to the Grand Jury, but since at least June 2012, and

4 | continuing up through and including October 3, 2012, in the Northern District of California, the

5 | defendants,

6 |                          JOSE FARIAS BARAJAS, a/k/a "Oso," and

7 |                    VICTOR MANUEL RODRIGUEZ, a/k/a "Silencer,"

8 | each aided and abetted by the other, unlawfully, willfully, and knowingly used and carried a

9 | firearm during and in relation to a drug trafficking crime, namely, the conspiracy to distribute and

10 | possess with intent to distribute methamphetamine charged in Count Seven of this Superseding

11 | Indictment, and the distribution and possession with intent to distribute methamphetamine

12 | charged in Count Nine of this Superseding Indictment, and  possessed a firearm in furtherance of

13 | the offenses charged in Count Seven, Count Eight and Count Nine of this Superseding

14 | Indictment.

15 |      All in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

16 | COUNT ELEVEN:    (18 U.S.C. §§ 922(g)(3) & (5) — Possession of a Firearm by a Prohibited

17 |                                Person)

18 |      40.     On or about August 13, 2012, in the Northern District of California, the

19 | defendant,

20 |                    VICTOR MANUEL RODRIGUEZ, a/k/a "Silencer,"

21 | was (a) an unlawful user of and addicted to a controlled substance, and (b) an alien who was

22 | illegally and unlawfully in the United States, unlawfully and knowingly possessed a firearm,

23 | described as a Rossi .38 Special revolver, in and affecting interstate and foreign commerce.

24 |      All in violation of Title 18, United States Code, Sections 922(g)(3) & (5).

25 | //

26 | //

27 | //

28 | //

SUPERSEDING INDICTMENT                    -14-

1  COUNT TWELVE:  (18 U.S.C. §§ 922(g)(3) & (5) — Possession of a Firearm by a Prohibited
2               Person)
3     41.    On or about October 3, 2012, in the Northern District of California, the defendant,
4                    VICTOR MANUEL RODRIGUEZ, a/k/a "Silencer,"
5  was (a) an unlawful user of and addicted to a controlled substance, and (b) an alien who was
6  illegally and unlawfully in the United States, unlawfully and knowingly possessed a firearm,
7  described as a 9mm Taurus semi-automatic pistol, model PT111 Millennium Pro, with serial
8  number TYA 53454, in and affecting interstate and foreign commerce.
9     All in violation of Title 18, United States Code, Section 922(g)(3) & (5).
10  NOTICE OF SPECIAL SENTENCING FACTORS REGARDING COUNT ONE
11     Number 1: Conspiracy to Commit Murder
12     42.    Beginning on a date unknown to the Grand Jury but since at least 2009, and
13  continuing up through and including the present, in the Northern District of California, the
14  defendants,
15                    JOSE FARIAS BARAJAS, a/k/a "Oso," and
16                    VICTOR MANUEL RODRIGUEZ, a/k/a "Silencer,"
17  together with others known and unknown, unlawfully, knowingly, and intentionally did conspire
18  to commit murder, in violation of California Penal Code Sections 187, 188, 189, and 182, to wit,
19  the defendants agreed together and with each other to kill, with malice aforethought, actual and
20  suspected members of rival gangs, individuals suspected of cooperating with law enforcement,
21  and individuals who defied the will of the Colonias/VTG Gang.
22     Number 2: Murder of Victim-1
23     43.    On or about August 13, 2012, in the Northern District of California, the
24  defendants,
25                    JOSE FARIAS BARAJAS, a/k/a "Oso," and
26                    VICTOR MANUEL RODRIGUEZ, a/k/a "Silencer,"
27  //
28  //

SUPERSEDING INDICTMENT            -15-

1  unlawfully, willfully, and intentionally, did kill, with malice aforethought, Victim-1, in violation

2  of California Penal Code Sections 187, 188, and 189.

3

4  DATED: April 24, 2013                                          A TRUE BILL

5

6                                                                        FOREPERSON

7

8  MELINDA HAAG
   United States Attorney

9

10 _____ for Miranda Kane

11 MIRANDA KANE
   Chief, Criminal Division

12

13 (Approved as to form:

14 STEPHEN MEYER
   DANIEL KALEBA

15 Assistant United States Attorneys

16

17

18

19

20

21

22

23

24

25

26

27

28

SUPERSEDING INDICTMENT                    -16-

E-FILING

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☑ INDICTMENT
                                            ☑ SUPERSEDING

---- OFFENSE CHARGED ----

See attachment

☐ Petty
☐ Minor
☐ Misde-
   meanor
☑ Felony

PENALTY:
See attachment.

CR 12 00723

---- Name of District Court, and/or Judge/Magistrate Location ----
NORTHERN DISTRICT OF CALIFORNIA

---- DEFENDANT - U.S. ----

▶ Jose Farias Barajas

DISTRICT COURT NUMBER

00723    EJD

APR 24 P 3: 40

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
N. DIST. OF CALIF. SAN JOSE

---- PROCEEDING ----

Name of Complaintant Agency, or Person (&Title, if any)
Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State
    Court, give name of court

☐ this person/proceeding is transferred from another
    district per (circle one) FRCrP 20, 21 or 40. Show
    District

☐ this is a reprosecution of
    charges previously dismissed
    which were dismissed on
    motion of:
    ☐ U.S. Att'y ☐ Defense

    this prosecution relates to a
    pending case involving this same
    defendant

    prior proceedings or appearance(s)
☐ before U.S. Magistrate regarding
    this defendant were recorded under

SHOW
DOCKET NO.

MAGISTRATE
CASE NO.

Name and Office of Person
Furnishing Information on   MELINDA HAAG
THIS FORM
               ☑ U.S. Att'y ☐ Other U.S. Agency

Name of Asst. U.S. Att'y
    (if assigned)    Stephen Meyer, AUSA

---- DEFENDANT ----

IS *NOT* IN CUSTODY
   Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons ▶
      was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☑ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other } ☑ Fed'l ☐ State
     charges
     If answer to (6) is "Yes", show name of institution

Has detainer    ☐ Yes    If "Yes"
been filed?     ☐ No      give date
                         filed

DATE OF       ▶    Month/Day/Year
ARREST

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED ▶    Month/Day/Year
TO U.S. CUSTODY

☑ This report amends AO 257 previously submitted

---- ADDITIONAL INFORMATION OR COMMENTS ----

PROCESS:
☐ SUMMONS ☑ NO PROCESS* ☐ WARRANT   Bail Amount: _____

   If Summons, complete following:
   ☐ Arraignment ☐ Initial Appearance    *Where defendant previously apprehended on complaint, no new summons
   Defendant Address:                          or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____

Before Judge: _____

Comments:

△1

## ATTACHMENT TO PENALTY SHEET

Count 1        18 U.S.C. § 1962(d) — Racketeering Conspiracy

    1) Imprisonment:      Maximum imprisonment of life
    2) Fine:               Maximum of the greater of: (a) $250,000; (b) twice the gross pecuniary gain to the defendant; or (c) twice the gross pecuniary loss inflicted on another
    3) Supervised Release:  Maximum 5 years
    4) Special Assessment:  $100

Count 2        18 U.S.C. § 1959(a)(5) - Conspiracy to Commit Murder in Aid of Racketeering

    1) Imprisonment:      Maximum imprisonment of 10 years
    2) Fine:               Maximum of the greater of: (a) $250,000; (b) twice the gross pecuniary gain to the defendant; or (c) twice the gross pecuniary loss inflicted on another
    3) Supervised Release:  Maximum 3 years
    4) Special Assessment:  $100

Count 3        18 U.S.C. § 1959(a)(6) - Conspiracy to Commit Assault with a Dangerous Weapon in Aid of Racketeering

    1) Imprisonment:      Maximum imprisonment of 3 years
    2) Fine:               Maximum of the greater of: (a) $250,000; (b) twice the gross pecuniary gain to the defendant; or (c) twice the gross pecuniary loss inflicted on another
    3) Supervised Release:  Maximum 3 years
    4) Special Assessment:  $100

Count 4        18 U.S.C. § 1959(a)(1) - Murder in Aid of Racketeering

    1) Imprisonment:      Maximum life imprisonment
                          Mandatory minimum life imprisonment
    2) Fine:               Maximum of the greater of: (a) $250,000; (b) twice the gross pecuniary gain to the defendant; or (c) twice the gross pecuniary loss inflicted on another
    3) Supervised Release:  Maximum 5 years
    4) Special Assessment:  $100

A1

Count 5        18 U.S.C. § 924(c)(1)(A)(I) - Possession of a Firearm During and in Relation to a
               Crime of Violence

      1) Imprisonment:          Mandatory minimum 10 years imprisonment (as charged)
                                consecutive to any other term of imprisonment
                                Maximum life imprisonment
      2) Fine:                  Maximum of the greater of: (a) $250,000; (b) twice the
                                gross pecuniary gain to the defendant; or (c) twice the gross
                                pecuniary loss inflicted on another
      3) Supervised Release:    Maximum 5 years
      4) Special Assessment:    $100


Count 6        18 U.S.C. § 924(j)(1) - Use/Possession of a Firearm in Furtherance of a Crime of
               Violence Resulting in Murder

      1) Imprisonment:          Maximum life imprisonment
      2) Fine:                  Maximum of the greater of: (a) $250,000; (b) twice the
                                gross pecuniary gain to the defendant; or (c) twice the gross
                                pecuniary loss inflicted on another
      3) Supervised Release:    Maximum 5 years
      4) Special Assessment:    $100


Counts 7-9     21 U.S.C. §§ 846, 841(a)(1) - Conspiracy to Distribute and Possess with Intent to
               Distribute, and Distribution and Possession with Intent to Distribute, 5 Grams or
               More of Methamphetamine;

      1) Imprisonment:          Mandatory minimum 5 years imprisonment
                                         Maximum 40 years imprisonment
      2) Fine:                  Maximum $5,000,000
      3) Supervised Release:    Mandatory minimum 4 years supervised release
                                Maximum lifetime supervised release
      4) Special Assessment:    $100


Count 10       18 U.S.C. § 924(c)(1)(A)(I) - Possession of a Firearm During and in Relation
               to and in Furtherance of a Drug Trafficking Crime

      1) Imprisonment:          Mandatory minimum 5 years imprisonment
                                consecutive to any other term of imprisonment
                                Maximum life imprisonment
      2) Fine:                  Maximum of the greater of: (a) $250,000; (b) twice the

gross pecuniary gain to the defendant; or (c) twice the gross
pecuniary loss inflicted on another

3) Supervised Release:        Maximum 5 years
4) Special Assessment:        $100


Counts 11-12   18 U.S.C. § 922(g) - Possession of a Firearm By A Prohibited Person

1) Imprisonment:        Maximum imprisonment of 10 years
2) Fine:                Maximum $250,000
3) Supervised Release:  Maximum 3 years
4) Special Assessment:  $100

3

Δ1

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☑ INDICTMENT
☑ SUPERSEDING

| Name of District Court, and/or Judge/Magistrate Location |
| --- |
| NORTHERN DISTRICT OF CALIFORNIA |

### OFFENSE CHARGED

See attachment

☐ Petty
☐ Minor
☐ Misde-
     meanor
☑ Felony

PENALTY:
See attachment.

### DEFENDANT - U.S.

▶ Victor Manuel Rodriguez

DISTRICT COURT NUMBER

CR12    00723    EJD

### DEFENDANT

**IS NOT IN CUSTODY**

1) ☐ Has not been arrested, pending outcome this proceeding.
       If not detained give date any prior summons
       was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☑ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other    } ☑ Fed'l  ☐ State
       charges

If answer to (6) is "Yes", show name of institution

### PROCEEDING

Name of Complainant Agency, or Person (&Title, if any)
Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State
    Court, give name of court

☐ this person/proceeding is transferred from another
    district per (circle one) FRCrP 20, 21 or 40.  Show
    District

☐ this is a reprosecution of
    charges previously dismissed
    which were dismissed on
    motion of:                              SHOW
    ☐ U.S. Att'y  ☐ Defense         DOCKET NO.
☐ this prosecution relates to a    }
    pending case involving this same
    defendant
☐ prior proceedings or appearance(s)    MAGISTRATE
    before U.S. Magistrate regarding    CASE NO.
    this defendant were recorded under ▶

Has detainer    ☐ Yes    If "Yes"
been filed?     ☐ No     give date
                         filed

Month/Day/Year

DATE OF
ARREST ▶

Or... if Arresting Agency & Warrant were not

Month/Day/Year

DATE TRANSFERRED ▶
TO U.S. CUSTODY

Name and Office of Person
Furnishing Information on    MELINDA HAAG
THIS FORM
                   ☑ U.S. Att'y  ☐ Other U.S. Agency

Name of Asst. U.S. Att'y
(if assigned)    Stephen Meyer, AUSA

☑ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS  ☑ NO PROCESS*  ☐ WARRANT    Bail Amount:

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance    *Where defendant previously apprehended on complaint, no new summons
                                         or warrant needed, since Magistrate has scheduled arraignment
Defendant Address:

Date/Time:

Before Judge:

Comments:

Δ2

## ATTACHMENT TO PENALTY SHEET

<u>Count 1</u>        18 U.S.C. § 1962(d) — Racketeering Conspiracy

      1) Imprisonment:        Maximum imprisonment of life
      2) Fine:               Maximum of the greater of: (a) $250,000; (b) twice the
                                  gross pecuniary gain to the defendant; or (c) twice the gross
                                  pecuniary loss inflicted on another
      3) Supervised Release:  Maximum 5 years
      4) Special Assessment:  $100

<u>Count 2</u>        18 U.S.C. § 1959(a)(5) - Conspiracy to Commit Murder in Aid of Racketeering

      1) Imprisonment:        Maximum imprisonment of 10 years
      2) Fine:               Maximum of the greater of: (a) $250,000; (b) twice the
                                  gross pecuniary gain to the defendant; or (c) twice the gross
                                  pecuniary loss inflicted on another
      3) Supervised Release:  Maximum 3 years
      4) Special Assessment:  $100

<u>Count 3</u>        18 U.S.C. § 1959(a)(6) - Conspiracy to Commit Assault with a Dangerous
                    Weapon in Aid of Racketeering

      1) Imprisonment:        Maximum imprisonment of 3 years
      2) Fine:               Maximum of the greater of: (a) $250,000; (b) twice the
                                    gross pecuniary gain to the defendant; or (c) twice the gross
                                  pecuniary loss inflicted on another
      3) Supervised Release:  Maximum 3 years
      4) Special Assessment:  $100

<u>Count 4</u>        18 U.S.C. § 1959(a)(1) - Murder in Aid of Racketeering

      1) Imprisonment:        Maximum life imprisonment
                                  Mandatory minimum life imprisonment
      2) Fine:               Maximum of the greater of: (a) $250,000; (b) twice the
                                    gross pecuniary gain to the defendant; or (c) twice the gross
                                  pecuniary loss inflicted on another
      3) Supervised Release:  Maximum 5 years
      4) Special Assessment:  $100

A2

<u>Count 5</u>    18 U.S.C. § 924(c)(1)(A)(I) - Possession of a Firearm During and in Relation to a Crime of Violence

| | |
|---|---|
| 1) Imprisonment: | Mandatory minimum 10 years imprisonment (as charged) consecutive to any other term of imprisonment<br>Maximum life imprisonment |
| 2) Fine: | Maximum of the greater of: (a) $250,000; (b) twice the gross pecuniary gain to the defendant; or (c) twice the gross pecuniary loss inflicted on another |
| 3) Supervised Release: | Maximum 5 years |
| 4) Special Assessment: | $100 |

<u>Count 6</u>    18 U.S.C. § 924(j)(1) - Use/Possession of a Firearm in Furtherance of a Crime of Violence Resulting in Murder

| | |
|---|---|
| 1) Imprisonment: | Maximum life imprisonment |
| 2) Fine: | Maximum of the greater of: (a) $250,000; (b) twice the gross pecuniary gain to the defendant; or (c) twice the gross pecuniary loss inflicted on another |
| 3) Supervised Release: | Maximum 5 years |
| 4) Special Assessment: | $100 |

<u>Counts 7-9</u>    21 U.S.C. §§ 846, 841(a)(1) - Conspiracy to Distribute and Possess with Intent to Distribute, and Distribution and Possession with Intent to Distribute, 5 Grams or More of Methamphetamine;

| | |
|---|---|
| 1) Imprisonment: | Mandatory minimum 5 years imprisonment<br>Maximum 40 years imprisonment |
| 2) Fine: | Maximum $5,000,000 |
| 3) Supervised Release: | Mandatory minimum 4 years supervised release<br>Maximum lifetime supervised release |
| 4) Special Assessment: | $100 |

<u>Count 10</u>    18 U.S.C. § 924(c)(1)(A)(I) - Possession of a Firearm During and in Relation to and in Furtherance of a Drug Trafficking Crime

| | |
|---|---|
| 1) Imprisonment: | Mandatory minimum 5 years imprisonment<br>consecutive to any other term of imprisonment<br>Maximum life imprisonment |
| 2) Fine: | Maximum of the greater of: (a) $250,000; (b) twice the |

A2

gross pecuniary gain to the defendant; or (c) twice the gross
pecuniary loss inflicted on another

3) Supervised Release:     Maximum 5 years
4) Special Assessment:     $100

Counts 11-12   18 U.S.C. § 922(g) - Possession of a Firearm By A Prohibited Person

1) Imprisonment:           Maximum imprisonment of 10 years
2) Fine:                   Maximum $250,000
3) Supervised Release:     Maximum 3 years
4) Special Assessment:     $100

3